IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| MICKI BROWN,<br><br>       Plaintiff,<br><br>  v.<br><br>OFFICER TALMAGE; SERGEANT<br>FREDDIE DAVIS; and BIANCA BRYANT<br>THURMAN,<br><br>       Defendants. | CIVIL ACTION NO.: 6:20-cv-48 |

**ORDER AND REPORT AND RECOMMENDATION**

Defendants Bianca Bryant Thurman and Freddie Davis filed their Motion for Summary Judgment, seeking summary judgment in their favor on all claims asserted against them. Doc. 60. The parties have fully briefed the matter. Docs. 60, 71, 72, 76. For the following reasons, I **RECOMMEND** the Court **GRANT** these Defendants' Motion for Summary Judgment and **DISMISS** Defendants Bryant Thurman and Davis. Additionally, I **DENY** Plaintiff's request to amend his Complaint. Plaintiff's claim against Defendant Officer Talmage remains pending.[1]

**PROCEDURAL HISTORY**

Plaintiff brought this 42 U.S.C. § 1983 action, alleging violations of his constitutional rights while incarcerated at Georgia State Prison ("GSP"). Doc. 1. Plaintiff alleges on May 18, 2019, Defendant Talmage used excessive force and violated his Eighth Amendment rights when

---

[1] Defendant Talmage has not moved for summary judgment. Thus, Plaintiff's Eighth Amendment excessive force claim against him remains pending.

Talmage slammed Plaintiff's hand in a tray flap in his cell door.[2]  Id. at 5, 8.  Plaintiff also alleges Defendants Correctional Officer Freddie Davis and Nurse Bianca Bryant Thurman violated his Eighth Amendment rights, as they were deliberately indifferent to Plaintiff's injury and delayed providing him medical treatment after learning of his injury.[3]  Id.  Plaintiff alleges he informed Defendant Bryant Thurman of his finger injury during pill call, but she did not render any medical aid and continued with pill call.  Id. at 8.  Similarly, Plaintiff alleges when he informed Defendant Davis of his injury, Davis ignored him.  Id.  The Court concluded Plaintiff's Complaint survived frivolity review and ordered service on Defendants for his Eighth Amendment excessive force claim and Eighth Amendment deliberate indifference to a serious medical need claims.  Doc. 21.

## UNDISPUTED MATERIAL FACTS

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."  Local R. 56.1.  Defendants submitted a Statement of Material Fact ("SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1.  Doc. 36-1.  Defendants' SMF relies on the declarations from Defendant Bryant Thurman and non-party Crystal Hendley, Plaintiff's medical records, and a transcript of Plaintiff's deposition.  Docs. 60-3, 61, 63, 63-1.

---

[2]  In his Complaint, Plaintiff alleges the injury occurred on May 23, 2019, but in the briefing related to the instant Motion, the parties agree the correct date of his injury was May 18, 2019.  Doc. 60-1 at 1; Doc. 72 at 1.  Thus, for purposes of summary judgment, the Court will use the May 18, 2019 date. Further, whether the injury occurred on May 18 or May 23 is immaterial to the Court's analysis.

[3]  Plaintiff also initially sued Officer Byrd.  Doc. 1.  The undersigned has recommended Officer Byrd be dismissed.  Doc. 82.

2

I.      **Plaintiff's Response to Defendants' SMF**

Plaintiff filed a Response to Defendants' SMF, in which he specifically admits or denies each enumerated fact. Doc. 72. The facts Plaintiff admits are considered true for purposes of summary judgment. Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted"). However, Plaintiff denies (at least in part) paragraphs numbers: 4, 5, 8–10, 12–15, and 18–20. Doc. 72. These responses warrant additional attention.

Plaintiff's responses to paragraphs numbers 5, 8, 9, and 12–15 should be entirely disregarded. Plaintiff's responses to these paragraphs do not actually address the facts alleged.[4] Instead, Plaintiff asserts generally that Defendant Bryant Thurman did not provide him medical care on May 18, 2019—a fact not alleged in the paragraphs. For example, Defendants' paragraph number 15 states, "Nurse practitioner *Cooper* examined Brown's hand, explained that Brown would have to have an x-ray, and prescribed Motrin." Doc. 60-1 at 3 (emphasis added). In response, Plaintiff explains other prison officials, other than Defendants, brought him to medical and he "denies that either Bryant Thurman or Davis got Plaintiff medical help." Doc. 72 at 5–6. But Plaintiff does not attempt to controvert the statement that Nurse Practitioner Cooper, a non-party, provided care to Plaintiff for his injury. For these paragraphs, where Plaintiff's response does address the fact alleged, the fact is deemed admitted. Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); A.M.R. ex rel. Reagin v. Glynn County, No. CV 211-

---

[4]     Plaintiff responds by stating he "Admit[s] in part, Den[ies] in part" some of these paragraphs, but the only portions he "denies" are facts that are not actually asserted. Doc. 72.

3

003, 2012 WL 6608754, at *1 n.1 (S.D. Ga. Dec. 18, 2012) ("[M]erely stating that a paragraph is controverted is insufficient to actually do so.").

The facts in paragraphs numbers 4, 8, and 10 should also be considered true for the purposes of summary judgment, but for a different reason. Paragraphs numbers 4, 8, and 10 all concern whether Defendant Bryant Thurman informed others of Plaintiff's need for medical care. Plaintiff cites to his deposition for support for his denials of these paragraphs. Doc. 72 at 2–3 (citing Doc. 60-3 at 17–18, 25, 27–30, 32, 47, 52, 55–56). However, none of the citations to the record support Plaintiff's assertion that Defendant Bryant Thurman failed to inform others Plaintiff needed medical attention. For example, Plaintiff cites to a portion of his deposition where he admits he does not know if Defendant Bryant Thurman notified someone he needed treatment.[5] Doc. 60-3 at 30. Because Plaintiff's responses to paragraphs numbers 4, 8, and 10 are not supported by the record, these paragraphs should also be deemed admitted for purposes of summary judgment. Williams, 438 F. App'x at 849–50.

## II.     Undisputed, Material Facts

Given these circumstances, and after reviewing the parties' submissions and the entire record, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:[6]

On May 18, 2019, Plaintiff was incarcerated at GSP. Doc. 60-1 at 1. At that time, Defendant Bryant Thurman worked at GSP as a nurse. Id. During pill call, Plaintiff informed Defendant Bryant Thurman his fingers had been slammed in the tray flap in his cell door and he

---

[5]     Plaintiff also insists Defendant Bryant Thurman failed to "actually" get him medical help, but Defendants do not allege she did in their SMF.

[6]     The facts recited here represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

4

thought his hand was broken. Id. at 1–2. Defendant Bryant Thurman observed Plaintiff's swollen and lacerated fingers and wrists, as well as his fingertips, which were purple. Id. After looking at Plaintiff's injury, Defendant Bryant Thurman told Plaintiff it was "bad," and she was going to try and get him some help.[7] Id. at 2. Defendant Bryant Thurman then told the sergeant on pill call with her to take Plaintiff to the prison medical unit. After pill call, Defendant Bryant Thurman informed the emergency room staff and the officer in charge, Lieutenant Arthur, about Plaintiff's injury. Id. Defendant Bryant Thurman did not take Plaintiff to the prison medical unit herself or provide him any aid.

Later that evening, Plaintiff described his injury to Defendant Freddie Davis, who was the officer in charge at that time. Id. at 2. Plaintiff told Defendant Davis his hand had been slammed in the feeding box and that Defendant Bryant Thurman told Plaintiff she was going to get him medical attention. Id. Defendant Davis did not take Plaintiff to the prison medical unit or provide him any medical treatment after Plaintiff informed him of his injury.

The next day, on May 19, 2019, Plaintiff was taken to the prison medical unit by other prison staff.[8] Id. at 2–3. Plaintiff was seen by a nurse and prescribed Motrin. Id. at 3. On May 20, 2019, Nurse Practitioner Cooper saw Plaintiff. During that visit, Plaintiff was again prescribed Motrin, as well as Robaxin, and x-rays were ordered. On June 11, 2019, Plaintiff had an x-ray of his hand, which revealed a non-displaced fracture of the distal phalanx of the fourth finger. Id. at 4. Plaintiff continued to be prescribed Motrin and Robaxin for pain management.

---

[7]   There is no indication in the record that Defendant Bryant Thurman agreed with Plaintiff that his finger was broken. Rather, Defendant Bryant Thurman simply observed Plaintiff had a bruised hand and purple fingertips.

[8]   In Defendants' briefing, they state it is unclear whether Plaintiff was brought to medical on May 19 or May 20. Doc. 60-1 at 2. In Plaintiff's Response, he explains he was taken to medical on May 19. Doc. 71 at 2; Doc. 72 at 4. Thus, Plaintiff's own admission establishes he was seen a day after his injury, on May 19, 2019.

5

The record does not indicate Plaintiff received or required any other immediate treatment for the injury. On March 24, 2020, more than nine months later, Plaintiff underwent carpal tunnel surgery. Id.

## DISCUSSION

### I.  Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial.

6

See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to present specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Qualified Immunity Bars Plaintiff's Claims

Defendants Davis and Bryant Thurman argue they are entitled to qualified immunity on Plaintiff's Eighth Amendment deliberate indifference to a serious medical needs claim because they were performing discretionary functions as government officials, they did not violate his constitutional rights, and their conduct did not violate "clearly established law."  Doc. 60-2; Doc. 76.  Plaintiff does not dispute Defendants were performing discretionary duties but argues Defendants violated his constitutional rights and the unlawfulness of their actions was clearly established.  Doc. 71.

"The qualified immunity doctrine protects an [official] unless at the time of the [official's] supposedly wrongful act the law 'was already established to such a high degree that every objectively reasonable" [official] in his place 'would be on notice' that what he was doing was 'clearly unlawful given the circumstances.'"  Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022) (citing Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002)).  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

7

818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." Lee, 284 F.3d at 1194. "As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Powell, 25 F.4th at 920 (quoting Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012)).

### A.     Whether Defendants Violated Plaintiff's Constitutional Rights

Plaintiff contends Defendants Bryant Thurman and Davis violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical need—his bruised fingertips and wrist injuries.

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Ross v. Corizon Med. Servs., 700 F. App'x 914, 916 (11th Cir. 2017) (quoting Estelle, 429 U.S. at 106). Thus, in order to prove a deliberate indifference to medical care claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing

that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002).

### 1.     *Plaintiff's injuries do not constitute a serious medical need.*

A serious medical need is one that has "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of the doctor's attention." Youmans v. Gagnon, 626 F.3d 557, 558 (11th Cir. 2010). In either situation, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (quoting Farmer, 511 U.S. at 834). Here, Plaintiff's medical need was swollen and lacerated fingers and wrists, as well as his fingertips turning purple. It was only later revealed Plaintiff fractured his finger. Although Defendants and Plaintiff disagree whether Plaintiff's finger injury constitutes a serious medical need under controlling law, there is no factual dispute about the factual circumstances of Plaintiff's injury. Doc. 71 at 3–4; Doc. 76 at 3.

A broken bone does not per se constitute a serious medical need. Compare Webb v. Langly, 267 F. App'x 910 (11th Cir. 2008) (affirming district court's conclusions that substantial delay in providing surgery for fractured nose did not pose a serious medical need), with Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (Defendants did not dispute broken foot can be a serious and painful injury.). Other courts have noted broken or bleeding fingers do not constitute a serious medical need for purposes of an Eighth Amendment claim. See, e.g., Kelly v. Jones,

9

No. 5:15-CV-0337, 2017 WL 2676422, at *4 (M.D. Ga. June 21, 2017) (citing Duran v. Donaldson, 663 F. App'x 684, 689 (10th Cir. 2016)); and Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001)). While there may be some instances where a broken finger is so serious, such as a compound fracture, that it constitutes a serious medical need, Plaintiff's injury here does not. Plaintiff's injury presented only as swelling and bruising, which is generally insufficient to qualify as a serious medical need. Young v. United States, No. 5:13-CV-609, 2015 WL 7759439, at *8 (M.D. Fla. Dec. 2, 2015) (collecting cases explaining bruises and swelling are generally not a serious medical need). There is nothing in the record suggesting Plaintiff had any mobility issues as a result of his finger injury, was in extreme pain, or otherwise required immediate medical attention. Under controlling law, Plaintiff's injuries do not qualify as a serious medical need, as that term is used in the context of a deliberate indifference claim.

### 2. *Defendants were not deliberately indifferent to Plaintiff's serious medical need.*

Even if Plaintiff's injuries qualified as a serious medical need, Defendants would still be entitled to summary judgment. Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

10

Plaintiff argues both Defendant Bryant Thurman and Defendant Davis were deliberately indifferent.  As to Defendant Bryant Thurman, Plaintiff argues she was deliberately different because she did not immediately provide care to him upon learning of his injuries.  Doc. 71 at 5–9.  Plaintiff is correct Defendant Bryant Thurman did not provide him medical assistance when she learned of his injuries.  However, what Defendant Bryant Thurman did do—note Plaintiff's medical issues, inform emergency room staff, and direct other officials to bring Plaintiff to receive medical attention, forecloses Plaintiff's claim.  Rather than being indifferent to his medical needs, Defendant Bryant Thurman informed others of Plaintiff's need for medical attention in order to ensure he received treatment.  While these efforts failed, and she arguably should have followed up to ensure he received medical attention, this demonstrates negligence, at most, rather than deliberate indifference.  But Defendant's negligence is not enough to support a deliberate indifferences claim. See Miller v. Allen, No. 1:13-CV-131, 2014 WL 3965954, at *9 (M.D. Ga. Aug. 13, 2014) (citing Simpson v. Holder, 200 F. App'x 836, 839 (11th Cir. 2006) ("Even if Defendant Brown . . . inadvertently failed to follow up with Plaintiff, she is not liable under § 1983."); Calhoun v. Volusia County, 499 F. Supp. 2d 1299, 1309 (M.D. Fla. 2007) (citing Estelle, 429 U.S. at 105–06) ("The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain.").

Plaintiff also argues Defendant Bryant Thurman is liable because her inaction caused a delay in treatment; this argument also fails.  A plaintiff seeking to show a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  Hill, 40 F.3d at 1188; see also Owen v. Corizon Health Inc., 703 F. App'x 844, 847 (11th Cir. 2017).  Here, Plaintiff has presented no medical evidence that any delay in treatment had detrimental

11

effects. While Plaintiff suggests the one-day delay in treating his broken finger caused his carpal tunnel, there is no evidence in the record supporting this assertion. Thus, Defendant Bryant Thurman is entitled to summary judgment.

As to Defendant Davis, Plaintiff fails to show he was subjectively aware of a risk of serious harm. To show the subjective component, Plaintiffs must present evidence Defendant Davis was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and must also have drawn the inference.'" Mitchell v. McKeithen, 672 F. App'x 900, 903 (11th Cir. 2016) (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not is insufficient to establish a constitutional violation." Collins v. Bates, No. 17-14559-G, 2018 WL 5090845, at *5 (11th Cir. May 10, 2018) (quoting Farmer, 511 U.S. at 837).

The undisputed material facts show Defendant Davis was aware only that Plaintiff's fingers had been slammed in the tray flap and Plaintiff's own statement that a nurse was going to get him medical attention. There is no indication Defendant Davis even observed Plaintiff's injuries, let alone concluded Plaintiff needed medical attention or the treatment required. Howell v. Burden, 12 F.3d 190 (11th Cir. 1994) (stating deliberate indifference requires not "merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment"); Mitchell, 672 F. App'x at 903 (finding there was no evidence the defendant nurse was subjectively aware of a risk of serious harm because no evidence indicated the nurse was aware that the inmate was suffering from a stroke, understood his condition, or disregarded that risk). Because there is no evidence Defendant Davis perceived the seriousness of Plaintiff's condition or the risk Plaintiff faced and disregarded that risk, Defendant Davis is entitled to summary judgment. Campbell v. Sikes, 169 F.3d 1353, 1364

(11th Cir. 1999) ("[L]iability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of an excessive risk to inmate health or safety and disregarded that risk.  Proof that the defendant should have perceived the risk, but did not, is insufficient.").  Thus, Defendant Davis is also entitled to summary judgment.

### B. Whether the Unlawfulness of Defendants' Conduct Was Clearly Established

Even if Defendants had violated Plaintiff's Eighth Amendment rights, the unlawfulness of their conduct was not clearly established.  The specific conduct at issue is Defendants' failure to provide medical care to Plaintiff upon learning about his hand and finger injuries (i.e., wrist lacerations, swelling, and bruised fingertips), and where care was delayed for about one day.  The undisputed material facts do not show any delay in care for Plaintiff's injury caused further damage or exacerbated his condition.  Therefore, the precise question is whether it was clearly established that a prison official violates the Eighth Amendment by failing to treat a hand and finger injury like Plaintiff's immediately upon learning about it, where a one-day delay resulted, and there is no evidence the delay caused further injury.

To receive qualified immunity, government officials must first establish they were acting within their discretionary authority during the events in question.  Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013).  Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority."  Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279 (11th Cir. 2017) (citing Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Because it is undisputed Defendants were acting within their discretionary authority, the burden shifts to Plaintiff to show qualified immunity does not apply.  Powell, 25 F.4th at 920 (citing Terrell, 668 F.3d at 1250).  "Qualified immunity protects government officers acting

13

within their discretionary authority from liability for civil damages unless a plaintiff can show (1) that the officer violated a federal statutory or constitutional right, and (2) that the unlawfulness of the officer's conduct was clearly established at the time." Wade v. Daniels, 36 F.4th 1318, 1323 (11th Cir. 2022) (citing Williams v. Aguirre, 965 F.3d 1147, 1156 (11th Cir. 2020)). The unlawfulness of an officer's conduct is "clearly established" at the time of the conduct if: "(1) a case with facts materially similar has been decided by the United States Supreme Court, the Eleventh Circuit, or the applicable state supreme court before the challenged conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the conduct so obviously violates the [C]onstitution that prior case law is unnecessary." Wade, 36 F. 4th at 1323 (citing Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017)). Ultimately, some established law must have provided the officers with "fair warning" their conduct was unconstitutional. Id. (citing Sebastian v. Ortiz, 918 F.3d 1301, 1311 (11th Cir. 2019)).

### 1.   *Materially similar case.*

Plaintiff argues the right to be free from deliberate indifference to a serious medical need under the Eighth Amendment is clearly established. Doc. 71 at 12. But well-established general propositions—like the one relied on by Plaintiff—are typically not enough to overcome qualified immunity. Corbitt v. Vickers, 929 F.3d 1304, 1316 (11th Cir. 2019) (holding the district court erred when relying on a general proposition to clearly establish excessive force is unconstitutional). Instead, Plaintiff needs to show there is binding caselaw that clearly establishes Defendants' conduct was unlawful—specifically, that Defendants violated the law by failing to immediately render treatment for his bruised and swollen finger, resulting in a one-day delay in care. See Plumhoff v. Rickard, 527 U.S. 765, 780 (2014) ("[R]espondent has not pointed us to any case—let alone a controlling case or a robust consensus of cases . . . that could

be said to have clearly established the unconstitutionality of using lethal force to end a high-speed car chase."). Plaintiff fails to meet his burden.

Plaintiff cites 20 cases to establish the unlawfulness of Defendants' conduct. Doc. 71 at 12–13. Many of these cases only stand for the general proposition that deliberate indifference to a serious medical need violates the Constitution. See, e.g., id. (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976); Newman v. Alabama, 559 F.2d 283, 294 (5th Cir. 1977), *reversed in part by* Alabama v. Pugh, 438 U.S. 781 (1978); Hurst v. Phelps, 579 F.2d 940, 941–42 (5th Cir. 1978); Murrell v. Bennett, 615 F.2d 306, 310 (5th Cir. 1980); Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990)).[9] These cases do not demonstrate the unlawfulness of Defendants Davis and Bryant Thurman's conduct was clearly established.

Other cases Plaintiff cites involve much more serious injuries than Plaintiff's injuries (i.e., cut wrist and bruised and swollen fingers), along with much longer delays in treatment. For example, Plaintiff cites McElligot v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999). Doc. 71 at 13. In McElligot, the plaintiff had cancer, was in severe abdominal pain, and lost significant weight but did not receive a diagnosis or treatment for several months. 182 F.3d at 1251–56. McElligot could not have put Defendants on their notice their conduct was unlawful. Plaintiff also cites Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1998), where the plaintiff-inmate had Agent Orange disease, causing lesions on his body to erupt and become infected. Prison officials confiscated the plaintiff's medically prescribed clothing and his medication was routinely not available. Id. at 1020. In Washington, the plaintiff had a chronic medical issue (very different from the isolated hand and finger injuries here) where the defendants deprived plaintiff of

---

[9] Indeed, in some of the cases Plaintiff cites, the court did not even find a violation of a plaintiff's Eighth Amendment rights. See e.g., Doc. 71 at 13 (citing Harris v. Thigpen, 941 F.3d 1495, 1504–07 (11th Cir. 1991); Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995)).

treatment, despite physician's orders. Because of these important differences, Washington does not establish the unlawfulness of Defendants' conduct. The other cases Plaintiff cites are also factually distinct in critical ways. See also Doc. 71 at 12–13 (citing Anacata v. Prison Health Services, 769 F.2d 700, 702–03 (11th Cir. 1985) (finding the plaintiff sufficiently pleaded a deliberate indifference claim where the defendants refused to provide treatment for swelling of the ankle, inability to sleep, chills, lower back pain, tingling and numbness of his hands, hyperventilation, severe pain in this back and right leg, double vision, and other serious problems); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989) (affirming district court ruling that plaintiff's Eighth Amendment rights were violated where the defendants knew the plaintiff collapsed, saw him walking with a limp and dragging his leg, and saw him screaming in pain when moving his injured leg but refused to provide the plaintiff treatment).

      None of the cases Plaintiff cites deal with facts similar to the ones before the Court—a failure to provide medical treatment to a bruised and swollen hand and fingertips that resulted in a one-day delay in medical treatment and no additional injury.[10] The most closely analogous case Plaintiff cites, Brown v. Hughes, 894 F.2d 1533, 1538–39 (11th Cir. 1990), still fails to put Defendants on notice of the unlawfulness of their conduct. In Brown, the plaintiff was attacked by another inmate and suffered two broken bones in his left foot and a cut under his right eye. Id. at 1536–38. The plaintiff's foot began to swell severely and he began to limp and hop. He then alerted the defendant to his injury. The defendant took no action. The plaintiff did not receive care for several hours, which caused plaintiff's foot to continue to swell, preventing the use of a cast for treatment. The delay exacerbated the plaintiff's condition to such a degree that he had to wait eleven days before a cast could be applied.

---

[10] Importantly, the undisputed material facts do not establish Defendants Bryant Thurman or Davis knew Plaintiff's finger was broken at that time, only that Plaintiff thought it might be broken.

16

Several critical facts materially distinguish this case from Brown. First is Defendants' awareness of Plaintiff's injuries. Here, Defendants were, at most, aware Plaintiff had a bruised and swollen hand and fingers and some lacerations on his wrist. Second is the seriousness of Plaintiff's injuries, as compared to the plaintiff in Brown. Plaintiff's injuries were substantially less alarming than the multiple broken foot bones and a facial laceration at issue in Brown. Further, Defendants' awareness of Plaintiff's injuries and the seriousness of the symptoms he presented differ materially from the plaintiff in Brown. There is no indication in the record Plaintiff was having trouble moving or using his hand and fingers, or if he was, that Defendants were aware of any such issues. This is unlike the plaintiff in Brown, who the defendant observed having obvious issues walking. Additionally, there is no evidence in the record Plaintiff's condition was made worse in any way by the one-day delay in treatment, while in Brown, the defendant's conduct caused the plaintiff to go an additional eleven days without a cast.[11] These factual distinctions are critical. As a result, Brown could not put Defendants on notice their conduct was unlawful. See Wade v. United States, 13 F.4th 1217, 1229 (11th Cir. 2021) ("In determining whether the law was clearly established for purposes of qualified immunity, we have explained that 'judicial precedents are tied to particularized facts,' and '[m]inor variations between cases may prove critical[.]'") (internal citations omitted) (some alterations in original).

In sum, the cases Plaintiff cites do not satisfy his burden, and the Court has not identified any case clearly establishing the unlawfulness of Defendants' conduct. To the contrary, courts have found that conduct like Defendants' does not violate the Eighth Amendment. See Edwards v. Manning, No. 3:08-cv-561, 2009 WL 2848209, at *4 (N.D. Fla. Sept. 1, 2009) (finding a nurse

---

[11] Plaintiff vaguely suggests the carpal tunnel surgery he received almost a year later was related to his broken finger and the delay in medical care for that finger. As discussed above, Plaintiff cites to no evidence in the record supporting this contention. Thus, the Court will not accept this vague suggestion as true for purposes of summary judgment.

was not deliberately indifferent where she examined plaintiff's swollen finger, which was later diagnosed as having been fractured, and made an appointment for him to see a doctor four days later).

### 2. *Broadly established principle and obvious clarity.*

Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation. Plaintiff has not pointed to any precedent which establishes "with obvious clarity" untethered to the particularized facts Defendants violated his constitutional rights by failing to get immediate treatment for his particular injuries. As discussed above, it would not necessarily be apparent to a prison official that the failure to treat Plaintiff's injury would amount to deliberate indifference. For similar reasons, Defendants' conduct was not obviously unconstitutional.

In sum, the undisputed material facts, construed in Plaintiff's favor, show Defendants Bryant Thurman and Davis failed to provide Plaintiff medical care for his bruised and swollen hand and fingers, which created a delay of one day in him receiving care, with no evidence that delay caused any exacerbation of Plaintiff's condition. Though Plaintiff challenges this inaction as unconstitutional, he has not shown Defendants' conduct was clearly unlawful. Plaintiff has not identified any case that clearly established a failure to immediately provide treatment for wrist lacerations and a bruised and swollen hand and fingers violates the Eighth Amendment. Further, the Court does not find a broader constitutional principle establishes the unlawfulness of Defendants' actions and does not find Defendants' conduct to be obviously unconstitutional. Therefore, qualified immunity bars Plaintiff's claims against Defendants, and Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim.

### III.     Plaintiff's Request to Amend His Complaint

In his Response, Plaintiff also asks for leave to amend to add Sergeant Bruce Miller, ER Staff, and Lt. Arthur to this case as Defendants.  Doc. 72 at 10–11.  Plaintiff explains he only learned about these potential defendants from Defendant Bryant Thurman's affidavit explaining who she informed about Plaintiff's injury.  Id.  Thus, he argues he should be permitted to amend under Rule 15.  First, amended pleadings were due in this case on April 19, 2021—nearly nine months before Plaintiff filed his Response—and Plaintiff has not met Rule 16's good cause standard to extend the deadline.  See Doc. 33.  Moreover, Plaintiff has not previously brought claims against Sergeant Bruce Miller, ER Staff, and Lt. Arthur, and Plaintiff cannot amend his Complaint in a response to a motion for summary judgment.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[A] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment" as "the proper procedure for plaintiffs to assert a new claim" at the summary judgment stage "is to amend the complaint in accordance with [Rule 15(a)].").  There is no indication Plaintiff could not have learned this information earlier during the discovery period.  Accordingly, Plaintiff's request for leave to amend is **DENIED**.

### CONCLUSION

Because Defendants are entitled to qualified immunity, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DISMISS** Defendants Bryant Thurman and Davis.  Additionally, I **DENY** Plaintiff's request to amend his Complaint.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or other filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate

Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of July, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA